## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DOLORES P. VALLEJOS,**

       **Plaintiff,**

**v.**                          **CIV 02-1162 LAM**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security**
**Administration,**

       **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (*Doc. 13*). In accordance with 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 14*), Defendant's response to the motion (*Doc. 17*), Plaintiff's reply to the response (*Doc. 19*), and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter, "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN PART AND DENIED IN PART**, and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "Commissioner") for further proceedings, including a re-hearing, consistent with this Memorandum Opinion and Order.

# I.  Procedural History

Plaintiff filed an application for supplemental security income benefits on February 1, 1996. (*R. at 42-44.*)  In connection with her application, she alleged a disability since July 23, 1995, due to injuries sustained in a motor vehicle accident.  (*R. at 42, 45.*)  Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 24, 26-29, 34-36.*)  An administrative law judge conducted an initial hearing on July 23, 1998. (*R. at 379-429.*)  Plaintiff was represented at the hearing by an attorney. (*R. at 381.*)  On  October 14, 1998, the administrative law judge issued his decision which was unfavorable to Plaintiff.  (*R. at 11-20.*)  Plaintiff filed a request for review on November 16, 1998.  (*R. at 372-378.*)   On February 5, 2000, the Appeals Council issued its decision denying Plaintiff's request for review (*R. at* 5-7), and on April 7, 2000, Plaintiff filed a timely civil action in this Court for review of the ALJ's decision (*R. at 496-497*).  Pursuant to an agreed motion to reverse and remand, this Court entered an order on November 28, 2000, remanding the case to the Commissioner for further administrative proceedings before an administrative law judge.[1] (*R. at 508.*) Accordingly, by order dated January 26, 2001, the Appeals Council vacated the final decision of the Commissioner in the case and remanded the case to a second administrative law judge (hereinafter "ALJ") for further proceedings consistent with the Court's order.  (*R. at 509-510.*)

The ALJ conducted a supplemental hearing on April 3, 2002. (*R. at 447-494.*)  Plaintiff was represented at the hearing by an attorney. (*R. at 449.*)  A vocational expert (hereinafter "VE") also testified at the hearing.  (*R. at 477-490.*)  On August 15, 2002, the ALJ issued his decision in which

---

[1]The order of remand required the administrative law judge to hold another administrative hearing and, thereafter, to "full[y] discuss the medical evidence supporting his physical and mental residual functional capacity findings, and further evaluate Plaintiff's ability to perform her past work on a function-by function basis." (*R. at 508.*)

he denied Plaintiff benefits and made the following findings, *inter alia,* with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 416.920: (1) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (2) claimant has an impairment or combination of impairments considered "severe" based on the requirements in 20 C.F.R. § 416.920(b); (3) claimant's medically determinable impairments, alone or in combination, do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the ALJ's decision; (5) the ALJ has carefully considered all of the medical opinions in the record regarding the severity of claimant's impairments; (6) claimant has the residual functional capacity (hereinafter, "RFC") for simple, unskilled light work that allows for the opportunity to alternate occasionally between sitting and standing, and claimant can only function in employment settings where the work is presented by demonstration and match-to-sample technique; (7) claimant is unable to perform any of her past relevant past work; (8) claimant is a younger individual between the ages of 18 and 44; (9) claimant has a high school education;  (10) claimant has no transferable skills from any of her past relevant work; (11) claimant has the RFC to perform a limited range of light work consistent with the ALJ's hypothetical question to the VE[2]; (12) the testimony of the VE establishes that claimant can perform sedentary to light unskilled jobs existing in significant numbers in the national economy as a ware cleaner, a final assembler of eyeglasses, and a cleaner of offices and residences; and (13) claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision.  (*R. at 440-441.*)

---

[2]The ALJ's hypothetical question to the VE is in the *Record* at 479-483.

After the ALJ issued his decision, Plaintiff relinquished her right to an appeal before the Appeals Council and filed this action for court review of the ALJ's decision on September 6, 2002.  (*Doc. 1.*)

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *See, e.g., Sisco v. U. S. Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  In making the substantial evidence determination on review, the Court may not  re-weigh the evidence or substitute its judgment for that of the Commissioner.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was forty-one years old at the time of the supplemental hearing.  (*R. at 42, 452.*) Plaintiff graduated from high school and attended vocational school.  (*R. at 455-56.*)  Plaintiff has past relevant work experience as a cosmetologist and a nail former.  (*R. at 67, 455-457.*)

Plaintiff was injured in a motor vehicle accident on July 23, 1995, and claims disability from that date.  (*R. at 42, 45.*)  Plaintiff has a medical history of head injury, temporal mandibular joint surgery, depression, headaches, memory problems, and neck, shoulder and back pain.  (*R. at 69, 103-104, 112-113, 117-118, 120-138, 371.*)  It is undisputed that Plaintiff fractured her skull and injured her jaw in the motor vehicle accident.  (*R. at 69, 112, 117-118.*)

In August of 1995, Plaintiff was seen by Michael Freedman, M.D., for a neurological consultation. His final impressions were of "post traumatic syndrome with depressed temporal skull fracture, beginning to improve" and "cervical strain." (*R. at 113.*) At various times from 1995 to 1998, Plaintiff was seen by treating physician George R. Swajian, D.O. (*R. at 120-134, 371.*)

In July of 1996, Plaintiff was physically evaluated by consulting physician Jan Hamilton, M.D. Dr. Hamilton examined Plaintiff, reviewed her medical records and prepared a report of her evaluation. (*R. at 287-293.*) Dr. Hamilton assessed Plaintiff as having an impairment of short-term memory and chronic neck and low back pain. (*R. at 290.*) Dr. Hamilton also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) for Plaintiff in which she found in an eight-hour workday that Plaintiff could stand and/or walk for a total of four hours (one-half hour without interruption) and sit for a total of four hours (one hour without interruption). (*R. at 292-293.*) Dr. Hamilton noted that Plaintiff had a "significant disturbance of cognition and short term memory," and strongly recommended a psychometric evaluation. (*R. at 293.*)

In August of 1996, Plaintiff was evaluated by consulting psychologist Geoffrey W. Sutton, Ph.D. Dr. Sutton interviewed Plaintiff, administered various psychological tests and prepared a report of his evaluation and Plaintiff's test results. (*R. at 294-322.*) Dr. Sutton assessed Plaintiff using a mental status exam, a Wechsler Adult Intelligence Scale - Revised and a Wechsler Memory Scale - Revised. (*Id.*) Dr. Sutton's impressions of Plaintiff were as follows: (1) he would expect her "to have difficulty in the recall of simple detailed and complex verbal instructions" and this would be "difficult in the recall shortly after hearing such instructions as well as on delayed recall;" (2) she would "also have difficulty recalling the sequence of items;" (3) he would "expect this to be quite frustrating for her in having difficulty learning and responding to new information;" (4) she also

5

would "appear to have some difficulty in recalling prior learned information;" (5) "[i]n contrast, she should do fairly well in learning and responding to information presented non-verbally in a visual and graphical format;" and (6) she "may be able to function in employment settings where work is presented by demonstration and match-to-sample technique." (*R. at 298.*)  Dr Sutton diagnosed Plaintiff with dementia secondary to motor vehicle accident, mood disorder secondary to head injury, intermittent pain associated with jaw and head injury including headaches and lower back pain, and unspecified left ear hearing deficits. (*R. at 298.*)  He assigned Plaintiff a Global Assessment of Functioning (hereinafter "GAF")[3] score of 50. (*R. at 299.*)

In January of 1998, Plaintiff was evaluated by consulting psychologist Susan Eissele, Ph.D. Dr. Eissele prepared a report of her evaluation. (*R. at 336-352.*)  As part of her evaluation, Dr. Eissele interviewed Plaintiff and administered a Wechsler Memory Scale - Revised. (*R. at 336.*) She also reviewed Plaintiff's referral documents, including Dr. Sutton's report. (*Id.*)  Dr. Eissele noted that Plaintiff "presented as somewhat depressed." (*R. at 341.*)  Dr. Eissele's conclusions regarding Plaintiff were that: (1) her memory functioning on evaluation was quite similar to Dr. Sutton's test results; (2) she "continues to show deficits in Verbal Memory and Delayed Recall;" (3) her "Visual Memory is significantly better than Verbal Memory;" (4) she "would have more

---

[3]The GAF Scale is a rating system on a scale of zero to one-hundred that is used by clinicians to assess an individual's overall level of functioning.  It is used to rate individuals with respect to their psychological, social and occupational functioning.  The GAF Scale is divided into ten ranges of functioning and each ten-point range in the GAF Scale has two components.  The first component covers symptom severity and the second component covers functioning.  The final GAF Scale rating always reflects whichever of the two is worse.  In most instances, GAF Scale ratings should assess an individual's level of functioning at the time of the evaluation. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 - 34 (4th ed., Text Revision, 2000) (hereinafter "DSM-IV-TR").

difficulty retaining information presented verbally than information presented visually;" and (5) she could have difficulty "learning many types of new tasks."  (*Id.*)

In August of 1996, a state agency psychologist completed a "Psychiatric Review Technique" form and a "Mental Residual Functional Capacity Assessment" form for Plaintiff.  (*R. at 323-335.*) This psychologist reviewed the evidence in Plaintiff's file and concluded that she appeared "able to do simple, routine, low-stress work."  (*R. at 325.*)  In January of 1998, state agency psychologist Donald Gucker, Ph.D., also completed a "Psychiatric Review Technique" form and a "Mental Residual Functional Capacity Assessment" form for Plaintiff.  (*R. at 353-366.*)  Dr. Gucker reviewed the evidence in Plaintiff's file and concluded that she appeared capable of unskilled substantial gainful activity.  (*R. at 362, 365.*)

At the close of the supplemental hearing, the ALJ stated his desire to obtain an up-dated medical assessment of Plaintiff.  (*R. at 492-493.*)  After the hearing, he ordered a consultative examination of Plaintiff by psychiatrist Steven Sacks, M.D.  Dr. Sacks examined Plaintiff in May of 2002, and prepared a report of his evaluation.  (*R. at 524-529.*)  He concluded that Plaintiff "probably is experiencing a major depression, single episode" which "seems related to physical pain complaints and lack of being unable [sic] to work since her motor vehicle accident."  (*R. at 526.*)  Dr. Sacks assigned Plaintiff a GAF score of 45.  (*Id.*)  He found no evidence of significant dementia and  opined that Plaintiff could: (1) "relate well with other workers, superiors or the public;" (2) "deal with changes in the work place situation and be aware of normal hazards and react appropriately;" (3) "understand and remember simple and somewhat more complex instructions;" and (4) "maintain the attention required to perform simple repetitive and somewhat more complex tasks."  (*R. at 527.*) Dr. Sacks expressed concern about Plaintiff's "ability to withstand the stress and pressures associated

with day-to-day work activities of a moderate or greater level" which he attributed to her untreated

depression.  (*Id.*)  He stated his belief that Plaintiff would benefit from psychotherapy and

antidepressant drugs.  (*Id.*)

## IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step five of the five-part sequential analysis for

determining disability.  The Commissioner has the burden at this step to show that Plaintiff can

perform other work available in significant numbers in the national economy considering her RFC,

age, education and past work experience.  *See Channel v. Heckler*, 747 F.2d 577, 579

(10th Cir.1984); 20 C.F.R. § 416.920.  In denying Plaintiff benefits at step five, the ALJ relied on the

testimony of the VE and the other evidence in the *Record*.  Based on that evidence, the ALJ

concluded that Plaintiff was not disabled because she could perform sedentary to light unskilled jobs

existing in significant numbers in the national economy as a ware cleaner, a final assembler of

eyeglasses and a cleaner of offices and residences.  (*R. at 440-441.*)

Plaintiff contends that the ALJ erred at step five of the sequential analysis.  Specifically,

Plaintiff argues that the ALJ's RFC finding, set forth below, is not supported by substantial evidence:

> The claimant has the following residual functional capacity: simple,
> unskilled light work that allows for the opportunity to alternate
> occasionally between sitting and standing.  In addition, the claimant
> can only function in employment settings where the work is presented
> by demonstration and match-to-sample technique.[4]

---

[4]The ALJ concluded that Plaintiff can only function in employment settings where work is
presented by demonstration and match-to-sample technique because of her difficulties following
verbal instructions.  (*R. at 439.*)

(*R. at 440.*)  In connection with her argument, Plaintiff asserts that the ALJ: (1) neglected important parts of the *Record* related to Plaintiff's mental impairments in assessing her RFC; (2) failed to include all of Plaintiff's mental and physical limitations in his hypothetical question to the VE; (3) ignored the GAF scores assigned to Plaintiff by Drs. Sutton and Sacks; (4) failed to provide the VE with the GAF score assigned to Plaintiff by Dr. Sacks; and (5) made invalid assumptions about the evidence of Plaintiff's claim.  Plaintiff asks the Court to reverse the Commissioner's decision and remand this case for the payment of benefits or, in the alternative, to remand for a rehearing. Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

## A.  Assessment of Plaintiff's RFC

Plaintiff acknowledges that the ALJ discussed the medical evidence of Plaintiff's condition in the body of his decision[5]; however, she argues that in assessing Plaintiff's RFC, the ALJ neglected important parts of the *Record* related to Plaintiff's mental impairments.  Plaintiff argues that the ALJ neglected information in the reports and/or medical records of Drs. Hamilton, Swajian, Sutton, Eissele and Sacks, and the state agency psychologists.  Plaintiff appears to argue that the ALJ "cherry-picked" the medical evidence, choosing to rely on medical evidence that supports a finding of disability and to ignore medical evidence that does not.  After carefully reviewing the *Record*, the Court does not agree.

The ALJ's decision contains an extensive discussion of the medical evidence related to Plaintiff's mental impairments and sets forth the ALJ's assessment of that evidence.  (*R. at 435-439.*)

---

[5]*Plaintiff's Memorandum in Support of Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for a Rehearing* (*Doc. 14*), at 5.

It is apparent from the ALJ's decision that he considered all of the material comprising the medical evidence of Plaintiff's mental impairments, and his assessment of Plaintiff's RFC adequately reflects her mental limitations.  While the ALJ did not discuss every piece of medical evidence in his decision, he was not required to do so.

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Id.*; *see also Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ('a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position').

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Moreover, the ALJ discussed medical evidence that he chose not to rely on and did not ignore significantly probative evidence of Plaintiff's mental impairments.  The Court will briefly address Plaintiff's arguments regarding this evidence.

First, Plaintiff argues that the ALJ ignored Dr. Hamilton's findings from her physical evaluation that Plaintiff suffered from a "significant disturbance of cognition and short-term memory," and needed a psychometric evaluation.  (*R. at 290, 293.*)  While the ALJ did not cite to these specific findings in his decision, he made multiple references to Dr. Hamilton's report.  (*R. at 435, 437, 438.*)  Additionally, he  discussed Plaintiff's cognition and memory problems in his decision in the context of the more detailed medical findings contained in the subsequent evaluation reports of Drs. Sutton, Eiselle and Sacks. (*R. at 436, 438, 439.*)  Dr. Hamilton's recommendation of a psychometric evaluation was addressed by the reports and testing done by Drs. Sutton, Eissele and Sacks. (*R. at 294-322, 336-352, 524-529.*)  Finally, Dr. Hamilton's finding that Plaintiff suffered cognition

and memory problems is not inconsistent with the ALJ's conclusion, in his assessment of Plaintiff's RFC, that she is limited to performing simple, unskilled light work in settings where, because of her difficulties following verbal instructions, the work is presented by demonstration and match-to-sample technique.  (*R. at 436, 439.*)

Second, Plaintiff argues that the ALJ ignored a statement by Dr. Swajian, Plaintiff's orthopedic surgeon, in a 1996 letter, that Plaintiff exhibited "considerable depression," and his suggestion that she be evaluated by a neuropsychologist to rule out any problem from the accident that might be affecting her emotional state.  (*R. at 122.*)  While the ALJ did not refer to these two statements in his decision, he did discuss the more detailed medical evidence of Plaintiff's depression contained in the subsequent evaluation reports of Drs. Sutton, Eissele and Sacks.  This shows the ALJ considered the evidence of Plaintiff's depression and took it into account in assessing Plaintiff's RFC. (*R. at 435, 437, 438, 439.*)  Dr. Swajian's recommendation of an evaluation by a neuropsychologist was addressed by the evaluations and testing of Plaintiff done by Drs. Sutton, Eissele and Sacks. (*R. at 294-322, 336-352, 524-529.*)

Third, Plaintiff appears to argue that the ALJ ignored Dr. Sutton's findings in 1996 that he would expect Plaintiff to have difficulty recalling verbal instructions and the sequence of items, a resulting difficulty learning and responding to new information, and difficulty recalling prior learned information. (*R. at 298.*)  However, the ALJ discussed Dr. Sutton's evaluation report in his decision and expressly noted Dr. Sutton's findings that Plaintiff's verbal memory for both immediate and delayed tasks was significantly impaired and Dr. Sutton's opinion that Plaintiff would have difficulty recalling even simple verbal instructions.  (*R. at 438.*)  The ALJ also noted Dr. Sutton's conclusions that Plaintiff's attention, concentration and visual memory were normal, and that she "may be able

to function in employment settings where work is presented by demonstration and match-to-sample technique." (*R. at 438.*)  The ALJ relied, in part, on these conclusions in developing his RFC assessment which limits Plaintiff to employment settings where the work is presented by demonstration and match-to-sample technique because of her difficulties following verbal instructions. (*R. at 438-439.*)

Fourth, without referencing any specific part of Dr. Eissele's 1996 report, Plaintiff appears to argue that the ALJ ignored Dr. Eissele's assessment of Plaintiff's memory problems.  However, as Plaintiff points out,  Dr. Eissele's assessment of Plaintiff's memory problems was consistent with Dr. Sutton's[6] and the ALJ discussed Dr. Eissele's findings in his decision, including her conclusion that Plaintiff had more difficulty retaining information presented verbally than information presented visually which the ALJ addressed in his RFC assessment.  (*R. at 435, 436, 438.*)

## B.   Hypothetical Question to VE

## 1.  Plaintiff's Mental Limitations

Plaintiff argues that the ALJ failed to include all of Plaintiff's mental limitations in his hypothetical question to the VE.  Specifically, Plaintiff argues that the ALJ failed to include limitations from Dr. Sutton's and Dr. Eissele's reports.  Plaintiff argues that when these limitations were included in questions to the VE by Plaintiff's counsel on cross-examination, the VE testified that Plaintiff would have problems maintaining employment.  (*R. at 483-486.*)  The Court finds that the ALJ's hypothetical question to the VE adequately related Plaintiff's mental limitations.

---

[6]Dr. Eissele noted that her evaluation of Plaintiff's memory function was quite similar to Dr. Sutton's evaluation.  (*R. at 341.*)  Like Dr. Sutton, she concluded that Plaintiff would have more difficulty retaining information presented verbally than information presented visually which would create difficulty learning new tasks.  (*Id.*)

Plaintiff's argument appears to focus on Dr. Sutton's findings that: (1) he would expect Plaintiff to have difficulty in recalling simple, detailed and complex verbal instructions; (2) she would have difficulty recalling verbal instructions shortly after hearing them and on delayed recall; (3) she would have difficulty recalling the sequence of items; and (4) he would expect this to be quite frustrating for her in having difficulty learning and responding to new information.[7]  (*R. at 298.*)  In response to questioning on these findings by Plaintiff's attorney at the supplemental hearing, the VE opined that all three jobs which he testified Plaintiff could perform required some initiative on the part of the worker to determine if there were other aspects of the job that needed to be done when regular tasks were finished.  (*R. at 485-486.*)  However, the VE did not opine that Plaintiff could not perform the three occupations because of these findings and, significantly, neither Dr. Sutton nor Dr. Eissele concluded that Plaintiff was unable to exercise initiative because of her mental limitations.  (*R. at 294-322, 336-341, 485-486.*)[8]  In fact, Dr. Sutton concluded, based on his examination and testing, that Plaintiff "should do fairly well in learning and responding to information presented non-verbally in a visual and graphic format," and "she may be able to function in employment settings where work is presented by demonstration and match-to-sample technique."  (*R. at 298.*)

---

[7]Plaintiff does not cite to specific passages of Dr. Eissele's report in connection with this argument; however, Dr. Eissele concluded that Plaintiff's memory function on her evaluation was quite similar to the test results obtained by Dr. Sutton.  She found that Plaintiff continued to show deficits in verbal memory and delayed recall and that she had more difficulty retaining information presented verbally than visually which could create difficulty learning new tasks.  (*R. at 341.*)

[8]The evidence of Plaintiff's daily activities in the *Record,* which include cooking simple meals, cleaning, grocery shopping, doing laundry and caring for her personal needs without supervision, support a conclusion that Plaintiff is able to perform different tasks and progress from task to task during a workday.  (*R. at 288, 463-466.*)

Testimony elicited by hypothetical questions to a VE must "relate with precision all of a claimant's impairments" in order to constitute substantial evidence to support a decision. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990). In this case, the ALJ's hypothetical question to the VE adequately related Plaintiff's mental limitations by reference to the ALJ's RFC assessment. The ALJ's hypothetical question to the VE asked the VE to assume, consistent with Dr. Sutton's and Dr. Eissele's reports, that Plaintiff was limited to "a light range of work, opportunity to occasionally alternate sit and stand, *but this individual because of mental consideration would be able to function only in [a] setting for work as presented by demonstration and matched sample technique.*" (*Emphasis added.*) (*R. at 479-482.*) Additionally, the ALJ asked the VE to assume that this would be very simple work which would not change from day-to-day. (*R. at 481.*) The Court finds that this RFC assessment, and the ALJ's hypothetical question to the VE, adequately related Plaintiff's mental impairments based on the *Record* of this case.

Plaintiff also maintains that the ALJ's hypothetical question to the VE failed to include limitations in Plaintiff's mental condition from the assessments of the state agency psychologists. Plaintiff argues that when these limitations were included in questions by Plaintiff's attorney to the VE, the VE testified there were no occupations available to Plaintiff. Of significance to the VE, in response to the questions posed by Plaintiff's attorney, was the finding by these psychologists that Plaintiff was moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*R. at 324, 364, 490.*) The VE testified that the foregoing limitation "would not be consistent with jobs within the economy without some type of ,

14

of, usually some type of special accommodation or arrangement on the part of the employer."
(*R. at 490.*)   The Court does not find error in the ALJ's failure to include this limitation in his
hypothetical question to the VE.   First, as the ALJ noted during the hearing, in spite of this limitation
one of the state agency psychologists concluded that Plaintiff "appears able to do simple, routine,
low-stress work" (*R. at 325, 491*), and the other concluded that Plaintiff appears capable of unskilled
substantial gainful activity (*R. at 365*).   These conclusions are not inconsistent with the ALJ's RFC
assessment and hypothetical question to the VE.   Second, these state agency findings were not
binding on the ALJ.   *See Baca v. Department of Health and Social Services*, 5 F.3d 476, 480
(10th Cir. 1993).   Third, neither of the state agency psychologists examined Plaintiff and the ALJ was
entitled to give more weight to the mental assessments of Plaintiff by Drs. Sutton, Eissele and Sacks,
each of whom examined Plaintiff.   *See Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987).

Plaintiff asserts that the ALJ erred by not including in his hypothetical question to the VE,
Dr. Sacks' expression of concern about Plaintiff's "ability to withstand the stress and pressures
associated with day-to-day work activities of a moderate or greater level" due to her untreated
depression.   (*R. at 527.*)   The ALJ discussed Dr. Sacks' report at length in his decision and noted
this finding as well as Dr. Sacks' findings that Plaintiff: (1) could relate well to other workers,
supervisors and the public; (2) had no evidence of any significant dementia; (3) could understand and
remember simple and somewhat more complex instructions; and (4) could maintain the attention
required to perform simple, repetitive and somewhat more complex tasks.   (*R. at 439, 527.*)
Additionally, the Court notes that Dr. Sacks did not conclude that Plaintiff was unable to withstand
low-level stress associated with day-to-day work activities.   (*R. at 527.*)   An ALJ is not required to
mirror a medical report to a vocational expert in order to accurately state a claimant's relevant

impairments.  The Court finds that the ALJ adequately accounted for Dr. Sack's findings in his

hypothetical question to the VE.  (*R. at 439, 479-483.*)

### 2.  Plaintiff's Physical Limitations

Plaintiff argues that Dr. Hamilton's sit/stand physical limitations for Plaintiff exclude all three

occupations which the VE initially testified Plaintiff could perform.   In the findings at issue,

Dr. Hamilton found that Plaintiff could: (1) stand and/or walk for four hours in an eight-hour work

day (up to one-half hour without interruption); and (2) sit for four hours in an eight-hour work day

(up to one hour without limitation).  (*R. at 292-293.*)[9]  In support of her argument, Plaintiff also cites

to the VE's testimony on cross-examination that if Plaintiff were limited to sitting no more than four

hours in an eight-hour day, she could not perform the occupations of ware cleaner or final assembler

of eyeglasses, and his testimony that the third occupation of cleaner/housekeeper requires that a

person be mostly on their feet and not sitting.  (*R. at 487-488.*)

In his RFC assessment and his hypothetical question to the VE, the ALJ described his

sitting/standing limitation for Plaintiff in these terms: "unskilled light work that allows for the

opportunity to alternate *occasionally* between sitting and standing" (*R. at 440*), and "limited to say

a light range of work, opportunity to *occasionally* alternate sit and stand" (*R. at 479*).  (*emphasis

added.*)  The ALJ did not define "occasionally," and the Court's research has uncovered no definition

in the relevant authorities in the context of a sit/stand frequency.  In response to the VE's limitation

of "occasionally" alternate sit/stand contained in his hypothetical question to the VE, the VE testified

that Plaintiff could perform all three occupations of ware cleaner, final assembler of eyeglasses and

---

[9] Dr. Hamilton's findings on the frequency of Plaintiff's need to alternate sitting and standing
are the only medical opinion evidence on this subject in the *Record*.

cleaner/housekeeper.  (*R. at 479-483.*)  However, on cross-examination, he testified that Plaintiff could not perform the job of ware cleaner or final assembler of eyeglasses if she is limited to sitting no more than four hours a day, and the job of cleaner/housekeeper would require her to "mostly stand," thereby implying that this job might not be available either.  (*R. at 487-488.*)

There is an inconsistency in the evidence regarding the occupations Plaintiff can perform which the Court cannot resolve from the *Record*.  On the one hand, with an "occasionally" sit/stand frequency, the VE testified that Plaintiff could perform all three identified occupations.  On the other hand, with a limitation of sitting no more than four hours in a day, the VE excluded two of the three occupations and testified that the third required mostly standing which conflicts with Dr. Hamilton's findings.  The Court cannot conclude from the *Record* whether Plaintiff is capable of performing the occupations identified by the VE.   Therefore the Court remands this case for the limited purpose of defining what is meant by "occasionally" in the sit/stand limitation in Plaintiff's RFC assessment and re-examining the VE regarding the occupations Plaintiff can perform.[10]  The ALJ should discuss the evidence that supports his determination of the frequency of Plaintiff's sit/stand limitation and, if the ALJ rejects Dr. Hamilton's medical findings on this subject, he should explain his reasons for doing so.

---

[10]The Court notes the requirement in *Social Security Ruling 96-9p*, 1996 WL 374185 at *7, that in cases where an individual can perform less than a full range of sedentary work and needs to alternate sitting and standing, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." *See also Godfrey v. Apfel*, 77 F.Supp.2d 1178, 1189-1190 (D. Kan. 1999) (ALJ must be specific in describing frequency of alternating sitting and standing based on medical evidence of record).

## C.  Plaintiff's GAF Scores

Plaintiff appears to argue that the ALJ ignored Dr. Sutton's GAF score of 50 in 1996, and Dr. Sack's GAF score of 45 in 2002.  (*R. at 299, 526.*)  Plaintiff argues that these scores are significant and appears to argue that they indicate Plaintiff is unable to perform unskilled work. Additionally, Plaintiff argues that the ALJ should have included Dr. Sack's post-hearing GAF score in his hypothetical question to the VE.

A GAF score of 45 or 50 indicates "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."[11]  While the ALJ did not mention Dr. Sutton's GAF score of 50 in his decision, he discussed Dr. Sutton's findings, including his conclusion that Plaintiff "may be able to function in employment settings where work is presented by demonstration and match-to-sample technique" which he included in his RFC assessment.  (*R. at 298, 438.*) Moreover, the ALJ discussed Dr. Sacks' GAF score of 45 in his decision, and took this score into account in assessing Plaintiff's RFC and determining that she had the ability to perform simple, unskilled, light work.  (*R. at 439-440.*)

A GAF score is not an absolute determiner of a claimant's ability to work.  *See Stalvey v. Apfel*, No. 98-5208, 2001 WL 50747, at **2 (10th Cir. August 18, 1999) (unpublished). Moreover, a GAF score in the range of 45-50 may indicate problems unrelated to the ability to hold a job. *See Whelchel v. Barnhart*, No. 02-7149, 2004 WL 613925, at **5 (10th Cir. March 22, 2004) (unpublished).  While a GAF score may be helpful in formulating RFC, it is not essential to the accuracy of the RFC.  *See Howard v. Commissioner of Social Security*, 276 F.3d 235, 241

---

[11]DSM-IV-TR at 34.

(6th Cir. 2002) (failure to reference GAF score in RFC, standing alone, does not make RFC inaccurate).   Dr. Sutton's report does not explain why he gave Plaintiff a GAF score of 50 and does not indicate that Plaintiff is unable to work.   (*R. at 294-299.*)   Dr. Sack's report implies that Plaintiff's GAF score was due to her depression which he attributed, at least in part, to her physical complaints and unemployment, and believed to be treatable.   (*R. at 526-527.*)   The Court does not find error in the ALJ's failure to mention Dr. Sutton's GAF score in his decision or his failure to include Dr. Sack's GAF score in his RFC assessment or hypothetical question to the VE.   The *Record* shows that the ALJ properly considered all of the evidence of Plaintiff's mental limitations and adequately accounted for her mental limitations in his RFC assessment and his hypothetical question to the VE.

### D.  Assumptions by ALJ

Plaintiff argues that the ALJ made invalid assumptions about Plaintiff's claim.   First, Plaintiff asserts that the ALJ improperly assumed that: (1) free or low cost medical care was available in her community (*R. at 437*); and (2) her ability to live alone and care for herself was evidence of a significant degree of competence (*R. at 438*).

The ALJ found that Plaintiff has had no regular medical treatment and takes only over-the-counter pain medications which he found to be a significant factor in considering Plaintiff's allegations of disabling pain.   (*R. at 437.*)   In connection with this, the ALJ noted that although Plaintiff testified that she did not go to the doctor because of a lack of funds, there was no evidence that she "has sought any free or low cost medical care that is available in her area."   (*Id.*)   Regardless of whether free or low cost medical services are actually available in Plaintiff's community, it was not improper for the ALJ to consider the absence of evidence that Plaintiff had sought such services in evaluating her claim that she has not sought medical treatment due to poverty.   *See Galdean v. Chater*, 1996

WL 23199 at **2 (10th Cir. N.M.) (unpublished), citing *Murphy v. Sullivan*, 953 F.2d 383, 386-387 (8th Cir. 1992) (failure to seek low-cost medical treatment and lack of evidence claimant had been denied medical care due to financial condition supports determination that claimant's financial hardship was not severe enough to justify failure to seek medical treatment).

The ALJ found that Plaintiff's ability to live alone and care for herself was evidence of a significant degree of competence. (*R. at 438.*) The ALJ made this finding in connection with his consideration of Plaintiff's daily activities. (*Id.*) Plaintiff argues this says nothing about her ability to function in a work environment. The ALJ is entitled to make reasonable inferences from the evidence. *See Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997). The Court finds it was reasonable for the ALJ to infer from Plaintiff's ability to live alone and care for herself that this demonstrated a significant degree of competence on her part.

## V.  Conclusion

The ALJ properly assessed Plaintiff's mental limitations and adequately accounted for those limitations in his RFC assessment and his hypothetical question to the VE. Additionally, the ALJ did not err in his consideration of Plaintiff's GAF scores or make improper assumptions in reaching his conclusions. Therefore the Court will **DENY** Plaintiff's motion on those issues. However, the ALJ failed to properly assess Plaintiff's physical limitations and account for those limitations in his hypothetical question to the VE. Accordingly, the Court will **GRANT** Plaintiff's motion on those issues and remand this case for further proceedings, including a re-hearing, consistent with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (*Doc. 13*) is **GRANTED IN**

**PART AND DENIED IN PART** and this case is **REMANDED** to the Commissioner for further

proceedings, including a re-hearing, consistent with this Memorandum Opinion and Order.  A final

order will be entered concurrently with this Memorandum Opinion and Order

  **IT IS SO ORDERED.**


         *Lourdes a. Martinez*
         **LOURDES A. MARTÍNEZ**
         **UNITED STATES MAGISTRATE JUDGE**
         **Presiding by Consent**